## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **ANN SNOOK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:08-CV-2242-VEH** |
| | ) |
| **JOHN E. POTTER, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

_____

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

Plaintiff Ann Snook ("Ms. Snook") initiated this job discrimination case against Defendant John E. Potter ("Mr. Potter"), the Postmaster General for the United States Postal Service (the "USPS"), under the Age Discrimination in Employment Act ("ADEA") on December 2, 2008.  (Doc. 1).  In her lawsuit, Ms. Snook maintains that she was wrongfully denied a promotion by the USPS on the basis of her age.  (*Id.* ¶ 8 ("Ms. Snook worked at the USPS Cook Springs, Alabama post office until the agency selected a much younger and less experienced candidate for the Cook Springs Postmaster position.")).

Pending before the court is Mr. Potter's Motion to Dismiss Or, in the Alternative, for Summary Judgment (Doc. 15) (the "Motion") filed on December 30,

2009.  Mr. Potter also filed supporting materials on December 30, 2009.  (Docs. 16, 17).

On February 1, 2010, Ms. Snook opposed the Motion.  (Docs. 19-21).  On February 16, 2010, Mr. Potter filed a reply brief.  (Doc. 22).  No further briefing was filed by either side, and the Motion is now under submission.  For the reasons explained below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## II.   FACTUAL BACKGROUND[1]

---

[1]   Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact.  *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007).  Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

Also, facts that are not material to the court's ruling on summary judgment have not been included in this background.  For example, because Mr. Potter concedes that Ms. Snook has established a *prima facie* case of age discrimination, *see* § IV.A. *infra*, facts (and arguments) relating to the decisionmaker's knowledge of the applicants' ages at the time of the selection are inconsequential.  *Cf. Carter v. DecisionOne Corp. Through C.T. Corp. System*, 122 F.3d 997, 1003 (11th Cir. 1997) ("Furthermore, while there is no requirement that the decisionmaker in an age discrimination case know that the employee is over forty, she [*i.e.*, the plaintiff] notes a great deal of evidence that the decisionmaker, Bill Spencer, knew that she was over forty.") (emphasis added).

### A.    The Cook Springs Post Office

The Cook Springs Post Office is a small office with one single employee – the "Postmaster."  AF No. 2.[2]  The Postmaster for the Cook Springs facility is a grade 11 on the Executive and Administrative Schedule ("EAS-11"), and the salary range is $31,102.00 to $48,566.00 per year.   AF No. 3; AF No. 12; AF No. 40.

The Postmaster gets days off, takes vacations, needs to occasionally take sick leave or other personal leave and when, this employee is out, it is the job of a Postmaster Relief ("PMR") to cover for him/her.  AF No. 4.  The PMR job is a part-time relief position, and payment is based on an hourly rate of $10.00 to $10.50.  AF No. 5.

### B.    Ms. Snook's Employment with the USPS

Ms. Snook was hired by the USPS as a PMR at the Cook Springs Post Office

---

[2]  The designation "AF" stands for admitted fact and indicates a fact offered by Mr. Potter that Ms. Snook has admitted in her written submissions on summary judgment, in her deposition testimony, or by virtue of any other evidence offered in support of her case.  Whenever Ms. Snook has adequately disputed a fact offered by Mr. Potter, the court has accepted Ms. Snook's version. The court's numbering of admitted facts (*e.g.*, AF No. 2) corresponds to the numbering of Mr. Potter's statement of facts as set forth in Doc. 16 and responded to by Ms. Snook in Doc. 20. A number following a decimal point corresponds to the particular sentence within the numbered statement of facts.  For example, (AF No. 23.2) would indicate the second sentence of paragraph 23 of Mr. Potter's statement of facts is the subject of the court's citation to the record.  Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

on August 18, 2007.  AF No. 1.  Ms. Snook worked as the Cook Springs PMR for approximately eight months from August 18, 2007, until April 10, 2008.  AF No. 6. The Postmaster, Ann Ronk ("Ms. Ronk"), was Ms. Snook's immediate supervisor. AF No. 7.

Ms. Snook also served as Officer in Charge ("OIC") at Cook Springs for approximately three months between April 11, 2008, and July 18, 2008, after Ms. Ronk received a promotion that caused her to leave Cook Springs.  AF No. 8.  An OIC is the title given to an interim employee who is the acting Postmaster when the Postmaster position is vacant at a postal facility.  AF No. 9.  The fact that an employee is placed in an OIC position does not guarantee that the employee will automatically fill the Postmaster slot.  AF No. 10.

Mike Allison ("Mr. Allison") was the Manager of Post Office Operations and supervised 30 post offices, including Cook Springs, during the relevant time period when Ms. Snook was OIC there.  AF No. 13; AF No. 17.  Mr. Allison recalled Ms. Snook as the OIC but did not remember whether he met her before she held that particular position. AF No. 14.

### C.    Postmaster Vacancy at Cook Springs

The Postmaster position at Cook Springs became vacant due to the promotion of Ms. Ronk, and a job announcement to fill the position was posted from April 15,

4

2008, through April 30, 2008.  AF No. 11.   Mr. Allison, age 47 at the time of the selection, was the selecting official for the vacant position for Cook Springs Postmaster.  AF No. 15.   Six USPS employees, including Ms. Snook, applied for the vacancy and were interviewed by Mr. Allison for the position.

### 1.   Applicant Elbert Davison

At the time he applied for the position of Postmaster, applicant Elbert Davison ("Mr. Davison") was most recently a grade level EAS-18, having been an OIC for 6 months and Acting Supervisor Customer Service for 2 years.  AF No. 21. Mr. Davison also had postal experience as a city carrier and was age 45.  AF No. 22.

### 2.   Applicant Debbie Johnson

At the time she applied for the position of Postmaster, applicant Debbie Johnson was an OIC grade level EAS-16 and a PMR in Shelby County, Alabama.  AF No. 23.1.  In addition to being an OIC for 7 months, she was PMR for 2 years, OIC for 9 months, and PMR for 3 years at 2 other locations.  AF No. 23.2.  Ms. Johnson was age 51 at the time of the selection.  AF No. 24.

### 3.   Applicant Gloria Manley

At the time she applied for the position of Postmaster, applicant Gloria Manley ("Ms. Manley") was an EAS-17 and Supervisor, Distribution Operations, and had more than 15 years of postal experience.  AF No. 25.  Ms. Manley was age 39 at the

time of the selection.  AF No. 26.

### 4.    Applicant Elizabeth Matthews

At the time she applied for the position of Postmaster, applicant Elizabeth Matthews ("Ms. Matthews"), was a Lead SSA T-7 in customer service. She had worked as a postal examination specialist for 4 years, an OIC for 12 months in 3 locations, and had approximately 19 years of postal experience in other positions. AF No. 29.  Ms. Matthews was age 49 at the time of the selection.  AF No. 30.

### 5.    Applicant Aimee Benson

At the time the selectee applied for the position of Postmaster, applicant Aimee Benson ("Ms. Benson") was in a temporary EAS-16 Account Manager position.  AF No. 27.  Ms. Benson previously served as PMR for 7 months, city carrier for 9 years in 2 locations, as well as a postal clerk for 2 years.  AF No. 28.  Ms. Benson was age 34 at the time of the selection.

While Ms. Snook had less overall experience as a postal employee than any of the other candidates and had worked for less than a year for the USPS, she had more postal experience directly applicable to the Cook Springs Postmaster position, including her work as a PMR and OIC at that location.  AF No. 31.

According to Mr. Allison, "postal experience is a different breed" [of experience and] "being in-house and understanding the postal life is a big factor in

career opportunities." AF No. 32. Mr. Allison rated postal experience higher than non-postal experience because of the postal service's unique manner of operation. AF No. 33. In the opinion of Mr. Allison, having postal experience better equips one to be a postal employee or supervisor than having non-postal experience. AF No. 34.

In making his selection to recommend a Postmaster for Cook Springs, Mr. Allison indicated that he did his "normal interview process where [he] interviewed the candidates, look[ed] at their qualifications, and select[ed] the one [he felt] is the best for the position." AF No. 39. Mr. Allison interviewed each candidate for approximately 15 to 30 minutes. AF No. 37. During the interview process, Mr. Allison did not have access to any applicant's official personnel file ("OPF"). AF No. 20. However, Mr. Allison did review the Form 991 electronic applications in making his recommendation. AF No. 38.

Mr. Allison ultimately selected Ms. Benson, age 34, as the Postmaster for Cook Springs. AF No. 35. The official change over for the Cook Springs office from the OIC to the Postmaster was scheduled for July 18, 2008. AF No. 43. Ms. Snook emailed her two-week notice of resignation to Mr. Allison on July 9, 2008. AF No. 41. Ms. Benson's effective date as Postmaster was July 19, 2008. AF No. 42.

## III.    STANDARD OF REVIEW

### A.    Summary Judgment

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R . Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

### B.    Employment Discrimination Generally

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1184 (11th Cir. 1984).  Although the Supreme

8

Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases in which there is no direct evidence of discrimination. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).[3]

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision.  Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though the defendant's

---

[3] As the Eleventh Circuit has explained, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, . . . constitute direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 782 (11th Cir. 1989) (footnote omitted).  Based upon this standard and in the absence of a record of <u>any</u> invidiously-charged utterances, Ms. Snook's case is purely a circumstantial evidence one. (*See* Doc. 20 at 14 ("Plaintiff seeks to prove her case via circumstantial evidence of age discrimination.")).

legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.

## C.    ADEA Discrimination

The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  In order to fall under the ADEA's protections, an employee must be "at least 40 years of age[,]" 29 U.S.C. § 631(a), and the plaintiff "retains the burden of persuasion to establish that age was the '<u>but-for</u>' cause of the employer's adverse action."[4]  *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343, 2351 (2009) (emphasis added).

The Eleventh Circuit "has adopted a variation" of the *prima facie* case standard articulated by the Supreme Court for Title VII claims in *McDonnell Douglas* for cases arising under the ADEA. *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 566 (11th Cir.1992).  "Under this variation of the *McDonnell Douglas* test for establishing a *prima facie* case of discrimination, the plaintiff must show that he (1)

---

[4]  In contrast to the <u>motivating factor</u> standard that is applicable in Title VII and other discrimination lawsuits.

was a member of the protected group of persons between the ages of 40 and 70, (2) was subject to adverse employment action, (3) was replaced with [or not selected for a position over] a person outside the protected group, and (4) was qualified to do the job." *Mitchell*, 967 F.2d at 566 (citation omitted); *see also Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998) ("To establish his *prima facie* case of discriminatory failure to promote, Standard must show that (1) he was in a protected group; (2) he was not given the promotion; (3) he was qualified for the position and (4) someone outside of the protected group was given the position.") (citation omitted).

"If this is done, the defendant has the burden of going forward and articulating a legitimate, non-discriminatory rationale for the [adverse employment action]." *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989). "Finally, if the defendant rebuts the presumption of discrimination, the plaintiff must prove by a preponderance of the evidence that the employer's asserted reason is merely a pretext for a discriminatory [action]." *Id.* (footnote omitted).

## IV.   ANALYSIS

### A.   Ms. Snook has established a *prima facie* case of age discrimination.

The record shows that Ms. Snook has established a *prima facie* case of age discrimination claim under the ADEA as she was age 50 at the time of the selection

11

and the USPS hired a person under the age of 40 (*i.e.*, Ms. Benson, age 34 at the time

of the decision) for the position that Ms. Snook as well as other applicants sought.

(*See* Doc. 16 at 12 (Mr. Potter's conceding that Ms. Snook "can establish a *prima*

*facie* case of age discrimination"); *id.* at 13 ("The USPS does not dispute that Snook

can establish a *prima facie* case of age discrimination.")).

> **B.** **The USPS has met its burden of production.**

The record also shows that the USPS has offered a non-discriminatory

explanation for the decision to select Ms. Benson over Ms. Snook through the

testimony of  Mr. Allison, the USPS official responsible for interviewing and

recommending that Ms. Benson be selected for the position of the Cook Springs

Postmaster.   In particular, Mr. Allison indicated that because he rated postal

experience higher than non-postal experience, Ms. Benson, with over 11 years of

overall postal experience, was the better candidate for the vacant position at Cook

Springs than Ms. Snook, with less than 1 year of overall postal experience.

As Mr. Allison expressly testified during his deposition:

Q.    All right.  Let's talk about the promotion decision to the Cook
      Springs postmaster.  Why did you pick Amy Benson over Mrs.
      Snook?

A.    In my personal opinion, she was the best qualified for the job.

Q.    Okay.  Tell me each and every reason you formed that personal

opinion that Mrs. Benson was better qualified or the best qualified.

A.    Years of service.

. . .

Q.    Okay.  Mrs. Benson's years of service and job as a career employee?  Anything else?

A.    Her PMR.  Her whole career where she was a PMR, clerk, a city carrier, she is [sic] a diverse postal background.

(*See, e.g.*, Doc. 17-3 at 66-67; *id.* at 120 ("[T]he big majority is postal experience.")).

## C.    Ms. Snook has produced sufficient evidence of pretext.

In evaluating the issue of pretext, "[t]he district court must evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'"  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (citations omitted). Here, the court determines that the record contains "'evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions.'" *See MacPherson v. University of Montevallo*, 922 F.2d 766, 776 (11th Cir. 1991) (quoting *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1998)).

13

This evidence, taken together and in a light most favorable to Ms. Snook which the court is obligated to do on summary judgment, includes hiring a less qualified person (*i.e.*, Ms. Benson) for the open position even though she lacked more directly relevant postal experience, had never worked at Cook Springs, had never been an OIC, and she needed training (*see, e.g.*, Doc. 17-7 at 22-23 (Ms. Benson's needing help from Ms. Snook in opening safe and following procedures)); *id.* at 23 (Ms. Benson's receiving training from a USPS employee from Pell City location)) over Ms. Snook, who had worked both as a PMR and OIC <u>at "one of the smallest"[5] post offices, *i.e.*, the single-employee Cook Springs postal facility</u>, especially when Mr. Allison testified that his role as a decisionmaker was "to put the people into the positions <u>that they best fit</u>" (Doc. 17-4 at 193 (emphasis added)) and that he had factored in Ms. Snook's performance as Cook Springs OIC and rated it "[f]avorable." (Doc. 20 ¶ 25; Doc. 17-4 at 79-80); *see, e.g., Durley v. APAC, Inc.*, 236 F.3d 651, 656 (11th Cir. 2000) ("A reasonable jury could conclude that Durley was more qualified to handle the administrative and purchasing duties performed by the Purchasing Agent [in light of Durley's assistance in training the hiree].")); *Cooper v. Southern Co.*, 390 F.3d 695, 725, 732 (11th Cir.2004), *cert. denied*, 546 U.S. 960 (2005) (in light of Ms. Snook's firsthand knowledge of and favorable performance in the Cook

---

[5]  (Doc. 17-3 at 54).

Springs Postmaster position, her qualifications compared to Ms. Benson's were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff").

Also difficult to reconcile is Mr. Allison's testimony about the important role that having years of service and overall postal experience played in his decision to pick Ms. Benson as the best qualified candidate with his conclusions that both Ms. Matthews and Ms. Manley were overqualified applicants due to their work histories with the USPS and the fact that the Cook Springs Postmaster position was an EAS entry-level job. *See*, *e.g., Bechtel Const. Co. v. Secretary of Labor*, 50 F.3d 926, 935 (11th Cir. 1995) ("The pretextual nature of Bechtel's terminating Nichols is further demonstrated by Bechtel's <u>shifting explanations for its actions</u>.") (emphasis added).

Several inconsistencies surface here which bring into question Mr. Allison's reliance upon Ms. Benson's record of postal experience as the key criterion for his selection of her. First, as Ms. Benson had experience working in a temporary EAS-16 Account Manager position, the EAS-11 entry-level opening was below the depth of her qualifications. Second, Ms. Benson's total years of service was over 10 and closely approached that of Ms. Manley, *i.e.* nearly 11 versus 15. Third, while Ms. Manley held an EAS-17 slot, there is no indication that Ms. Matthews had held any EAS slot, temporary or otherwise. (Doc. 17-4 at 193-94 ("Manley was already in an

15

EAS position[.]"); *id.* at 194 ("She's [*i.e.*, Ms. Matthews] a higher-level clerk at South Highland.")).

Therefore, in comparing the postal records of Ms. Benson, Ms. Manley, and Ms. Matthews, the subjective lines drawn by Mr. Allison between being sufficiently experienced as opposed to negatively overqualified for the Cook Springs Postmaster position are murky at best. Relatedly, if having too much postal experience was bad for the Postmaster position at Cook Springs because of its EAS entry-level status then Ms. Benson's "diverse postal background", including a temporary post at an EAS-16 level, would be a reason not to select her for the position. However, to the contrary, Mr. Allison has testified that Ms. Benson's "diverse postal background" is the very reason he chose her. This contradictory rationale offered by Mr. Allison for his selection of Ms. Benson makes the legality of his employment decision one for a trier of fact to resolve. *See Combs*, 106 F.3d at 1537 ("A defendant who puts forward only reasons that are subject to reasonable disbelief in light of the evidence faces having its true motive determined by a jury.").

More particularly, as to pretext, "[t]he evidence presented by plaintiff[] is sufficient to allow a jury in the exercise of impartial judgment to conclude that [the USPS's] proffered explanations are unworthy of belief." *MacPherson*, 922 F.2d at 776. Alternatively, a reasonable jury could equally conclude that no age

discrimination under the ADEA occurred in the USPS's decision to hire Ms. Benson, instead of Ms. Snook.  *See Combs*, 106 F.3d at 1538 ("Even if the jury concludes that all the employer's proffered explanations are unworthy of belief, it may still remain unpersuaded that discrimination was the real reason for the employer's decision."); *id.* ("That decision is entrusted to the jury's discretion, but to exercise that discretion, the jury has to get the case.").

> **D.**   **The USPS is entitled to partial summary judgment with respect to the alternatively raised issues of Ms. Snook's claim for liquidated damages and her jury demand.**

Alternatively, the USPS requests that "[i]f the Court does not  dismiss Plaintiff's complaint in its entirety . . . the Court strike Plaintiff's demands for liquidated damages and trial by jury."  (Doc. 16 at 23).   In opposing summary judgment, Ms. Snook has not responded to any of these arguments.  Accordingly, Ms. Snook has abandoned her claim for liquidated damages and her jury demand and, as a result, those components of her case are appropriately subject to being dismissed or stricken on that basis alone.  *See, e.g., Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be

17

made based upon the materials before it on summary judgment.") (citation omitted); *Dunmar*, 43 F.3d at 599 ("[T]he onus is upon the parties to formulate arguments[.]") (citation omitted); *Hudson v. Norfolk Southern Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.") (citations omitted).

Moreover, the merits of the USPS's contentions about Ms. Snook's efforts to recover liquidated damages and have a jury determine her claim are both substantively sound.  In particular and as confirmed by controlling case authority, the ADEA provisions underlined applicable to federal employees do not provide for liquidated damages or a jury trial.  *See* 29 U.S.C. § 633a(f) (governing age discrimination claims involving federal agencies and providing that "[a]ny personnel action of any department, agency, or other entity referred to in subsection (a) of this section shall not be subject to, or affected by, any provision of this chapter [including liquidated damages and right to a jury trial], other than the provisions of sections 626(d)(3) and 631(b) of this title and the provisions of this section"); *see also Lehman v. Nakshian*, 453 U.S. 156, 166 (1981) ("In contrast, Congress added an entirely new section, § 15 [*i.e.*, the federal sector provision], to address the problems of age discrimination in federal employment.") (emphasis added); *Lehman*, 453 U.S. at 162 ("Section 15 contrasts with § 7(c) of the Act, 29 U.S.C. § 626(c) (1976 ed., Supp. III), which

authorizes civil actions against private employers and state and local governments, and which *expressly* provides for jury trials."); *Lehman*, 453 U.S. at 162 ("Congress accordingly demonstrated that it knew how to provide a statutory right to a jury trial when it wished to do so elsewhere in the very 'legislation cited[.]'  But in § 15 it failed explicitly to do so.") (emphasis added) (footnote and internal and other citations omitted); *Lehmam*, 453 U.S. at 166-67 ("Here Congress deliberately prescribed a distinct statutory scheme applicable only to the federal sector, and one based not on  the FLSA but, as already indicated, on Title VII, where, unlike the FLSA, there was no right to trial by jury.") (emphasis added) (footnotes omitted); *Gomez-Perez v. Potter*, 553 U.S. 474, 128 S. Ct. 1931, 1940 n.2 (2008) ("The situation here is quite different from that which we faced in *Lehman v. Nakshian*, 453 U.S. 156, 101 S. Ct. 2698, 69 L. Ed. 2d 548 (1981), where both the private and federal-sector provisions of the ADEA already existed and a single piece of legislation-the 1978 amendments to the ADEA-added a provision conferring a jury-trial right for private-sector ADEA suits but failed to include any similar provision for federal-sector suits.") (emphasis added) (citation omitted); *Lewis v. Federal Prison Industries, Inc.*, 953 F.2d 1277, 1282 (11th Cir. 1992) ("'Congress' failure to do so suggests that it intended that FLSA remedies [*i.e.*, attorney's fees and liquidated damages] would not be available in federal employee ADEA cases.'")

(emphasis added) (citation omitted)).  Therefore, as a former federal employee, Ms.

Snook is not entitled to recover liquidated damages or have her claim determined by

a jury under the ADEA.

## V.      CONCLUSION

Accordingly, for the foregoing reasons, Mr. Potter's Motion is **GRANTED IN**

**PART**, and Ms. Snook's claim for liquidated damages and her demand for a trial by

jury are **HEREBY DISMISSED** and/or **STRICKEN** from Ms. Snook's complaint.

In all other respects, the Motion is **DENIED**.

**DONE** and **ORDERED** this the 25th of March, 2010.

_____

**VIRGINIA EMERSON HOPKINS**
United States District Judge

20